1
2
3
4
5
6
7
8           UNITED STATES DISTRICT COURT

9           SOUTHERN DISTRICT OF CALIFORNIA

10

11   SEAN LICEA, individually and on behalf          Case No.:  3:19-cv-1565-JM-AHG
     of all others similarly situated,
12                                                    **ORDER RESOLVING JOINT**
                                      Plaintiff,      **MOTION FOR DETERMINATION**
13                                                    **OF DISCOVERY DISPUTE,**
     v.                                               **GRANTING PLAINTIFF'S**
14                                                    **MOTIONS TO COMPEL, AND**
     BESHAY FOODS, INC.,                              **DENYING DEFENDANT'S MOTION**
15                                                    **TO COMPEL**
                                      Defendant.
16                                                    **[ECF No. 16]**

17

18

19

20

21

22          Before the Court is Plaintiff Sean Licea ("Plaintiff") and Defendant Beshay Foods,

23   Inc.'s ("Defendant") Joint Motion for Determination of Discovery Dispute. ECF No. 16.

24   Plaintiff seeks an order from the Court compelling responses to Interrogatory Nos. 12–16

25   and to discovery requests relating to "Defendant's Facilities." *Id*. Defendant seeks an order

26   from the Court compelling Plaintiff to submit to an Ophthalmologic Independent Medical

27   Examination ("IME"). *Id*. For the reasons set forth below, the Court **GRANTS** Plaintiff's

28   motions to compel and **DENIES** Defendant's motion to compel.

## I.   BACKGROUND

In his complaint, Plaintiff alleges that when he visited Defendant's restaurant, he was denied access to its Coca-Cola Freestyle touch-screen fountain soda machine ("Freestyle machine") because he is a legally blind individual. ECF No. 1 at ¶¶ 2, 41–43. Specifically, Plaintiff alleges that, upon receiving his meal, he was handed an empty soft drink cup to be filled up at the self-service Freestyle machine and was not offered assistance by any of Defendant's employees, even though he has an obvious visual disability and uses a white cane. *Id.* at ¶¶ 51, 55–56. Plaintiff further alleges that, during one visit, his request to an employee for assistance in operating the Freestyle machine was denied. *Id.* at ¶ 57. Additionally, Plaintiff alleges that Defendant has no policies or procedures in place at its restaurants to provide assistance to customers with visual disabilities. *Id.* at ¶¶ 45, 74. Therefore, Plaintiff brings this action "on behalf of himself and all individuals who have an obvious visual disability (e.g., use a white cane or guide dog) who have attempted to access, or will attempt to access, Freestyle machines at Defendant's Restaurants during the relevant statutory period and were not affirmatively offered assistance with the Freestyle machine." *Id.* at ¶ 78.

The specific discovery requests at issue in the instant motion arise from Plaintiff's Omnibus Discovery Requests Directed to Defendant, which include interrogatories, requests for admissions, and requests for production of documents. ECF No. 16-2. Plaintiff propounded these discovery requests on December 9, 2019, and Defendant served its responses on January 13, 2020. ECF No. 16-1 at 20, 34; ECF No. 16-2 at 29. Pursuant to the Court's Chambers Rules, the parties jointly emailed the Court to request a telephonic conference regarding multiple discovery disputes. *See* Chmb.R. at 3. After a telephonic discovery conference with the parties on February 24, 2020, the Court found it appropriate to issue a briefing scheduling in this matter, requiring a joint motion for determination of the discovery disputes to be filed by March 30, 2020. ECF Nos. 14, 15. The parties untimely filed their joint motion on March 31, 2020. ECF No. 16.

/ /

## II.    LEGAL STANDARD

"The party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Superior Commc'ns v. Earhugger, Inc.*, 257 F.R.D. 215, 217 (C.D. Cal. 2009); *see Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) (requiring defendants "to carry a heavy burden of showing why discovery was denied"); *see also Bryant v. Ochoa*, No. 07cv200-JM-PCL, 2009 WL 1390794, at *1 (S.D. Cal. May 14, 2009) ("The party seeking to compel discovery has the burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)(1). Thereafter, the party opposing discovery has the burden of showing that the discovery should be prohibited, and the burden of clarifying, explaining or supporting its objections."). The party resisting discovery must specifically detail the reasons why each request is objectionable, and may not rely on boilerplate, generalized, conclusory, or speculative arguments. *F.T.C. v. AMG Servs., Inc.*, 291 F.R.D. 544, 553 (D. Nev. 2013). Arguments against discovery must be supported by "specific examples and articulated reasoning." *U.S. E.E.O.C. v. Caesars Ent.*, 237 F.R.D. 428, 432 (D. Nev. 2006).

District courts have broad discretion to manage discovery. *Laub v. United States DOI*, 342 F.3d 1080, 1093 (9th Cir. 2003); *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002). This discretion extends to crafting discovery orders that may expand, limit, or differ from the relief requested. *See Crawford-El v. Britto*n, 523 U.S. 574, 598 (1998) (trial court has "broad discretion to tailor discovery narrowly and to dictate the sequence of discovery"); *UMG Recordings, Inc. v. Doe*, No. C 08-1038 SBA, 2008 WL 2949427, at *3 (N.D. Cal. Jul. 30, 2008) ("[T]he district courts wield broad discretion" in fashioning discovery orders).

## III.    DISCUSSION

The parties raise three issues within their joint motion for determination of discovery dispute: (1) Plaintiff seeks to compel responses to certain interrogatories (Nos. 12–16); (2) Plaintiff seeks to compel responses to interrogatories and requests for production of

documents relating to "Defendant's Facilities;" and (3) Defendant seeks to compel an ophthalmologic IME of Plaintiff. ECF No. 16 at 2, 4, 8. The Court will address these in turn.

### A. Whether the Subparts in Interrogatory Nos. 3, 4, 6, 8, and 11 Cause the Total Number of Interrogatories to Exceed the Limit Imposed by the Federal Rules

Plaintiff seeks to compel responses to Interrogatory Nos. 12–16. ECF No. 16 at 2. Defendant has refused to provide responses to these interrogatories because it claims that Interrogatory Nos. 3, 4, 6, 8, and 11 contain subparts that cause the number of interrogatories to exceed the limit imposed by the Federal Rules, and therefore, Plaintiff's last five interrogatories are improper. ECF No. 16-1 at 10–12; ECF No. 16 at 12. Plaintiff and Defendant disagree about whether the interrogatories' subparts are sufficiently related.

### i. Legal Standard

"Unless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts." FED. R. CIV. P. 33(a)(1). "The aim [of Rule 33(a)] is not to prevent needed discovery, but to provide judicial scrutiny before parties make potentially excessive use of this discovery device." FED. R. CIV. P. 33(a) advisory committee's notes to 1993 amendments. Although Rule 33(a) states that "discrete subparts" should be counted as separate interrogatories, it does not define that term. *Safeco Ins. Co. of Am. v. Rawstron*, 181 F.R.D. 441, 442–43 (C.D. Cal. 1998) (noting that the extensive use of subparts could defeat the purpose of the numerical limit contained in Rule 33(a) by rendering it meaningless, while also recognizing that if all subparts count as separate interrogatories, the use of interrogatories might be unduly restricted). However, "courts generally agree that 'interrogatory subparts are to be counted as one interrogatory ... if they are logically or factually subsumed within and necessarily related to the primary question.'" *Trevino v. ACB Am., Inc.*, 232 F.R.D. 612, 614 (N.D. Cal. 2006) (quoting *Safeco*, 181 F.R.D. at 445); *see Montgomery v. Wal-Mart Stores, Inc.*, No. 12cv3057-JLS-DHB, 2015 WL 11233384, at *3 (S.D. Cal. July 17, 2015);

*Makaeff v. Trump Univ., LLC*, No. 10cv940-GPC-WVG, 2014 WL 3490356, at *4 (S.D. Cal. July 11, 2014); *accord Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*, 315 F.R.D. 191, 196 (E.D. Tex. 2016) (collecting cases from numerous circuits to show a general consensus on the "related question" approach, i.e., "subparts that are logically or factually subsumed within and necessarily related to the primary question should not be treated as separate interrogatories"). "Subparts asking for facts, documents, and witnesses relating to a primary contention or allegation are logically or factually related, and [] should be construed as subsumed in the primary question" and therefore do not count as separate interrogatories. *Synopsys, Inc. v. Atoptech, Inc.*, 319 F.R.D. 293, 297 (N.D. Cal. 2016). Such an inquiry requires a case-specific and interrogatory-specific assessment. *Id.* at 295.

### ii.  Analysis

Although Plaintiff seeks to compel responses to Interrogatory Nos. 12–16, because Defendant objected to them solely because Plaintiff had exceeded his 25 permitted interrogatories, the Court will focus on whether Interrogatory Nos. 3, 4, 6, 8, or 11 include discrete subparts. *See* ECF No. 16-1 at 10–12.

In Interrogatory No. 3, Plaintiff requests:

> Please provide the following information for each of Defendant's Facilities: (i) the street address; (ii) whether the property is owned or leased (and by whom); (iii) the General Manager during the Relevant Time Period; (iv) the number of Freestyle machines at the location (if any); (v) the date the Freestyle machine(s) was installed at the location; and (vi) the owner of the Freestyle machine(s) at the location.

ECF No. 16-2 at 11. In its responses to Plaintiff's discovery requests, and again reaffirmed in the joint motion, Defendant objects to this request, stating that the subparts cause the number of interrogatories to exceed the limit imposed by the Federal Rules. ECF No. 16 at 12; ECF No. 16-1 at 3–4. Defendant argues that Interrogatory No. 3 contains "not just subparts but entirely unrelated subject matter." ECF No. 16 at 12–13. The Court disagrees, and finds that the subparts relate to the overall subject matter of the interrogatory, i.e., describing Defendant's Facilities. The Court finds that distinctions between location,

ownership, management, and information about each location's Freestyle machines do not create discrete subparts that should be treated as separate interrogatories. *See Synopsys*, 319 F.R.D. at 294 ("it would appear that an interrogatory containing subparts directed at eliciting details concerning a common theme should be considered a single question, although the breadth of the area inquired about may be disputable") (quoting 8A CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2168.1, at 39–40 (3d ed. 2010)); *Erfindergemeinschaft*, 315 F.R.D. at 196 ("the issue of 'discreteness' often cannot be resolved by resort to a crisp verbal formula; [] the reality [is] that 'discreteness' is a matter of degree and that deciding whether a subpart of an interrogatory is sufficiently 'discrete' to be regarded as a separate interrogatory will frequently depend on the particular circumstances of each case and may not always be answerable with complete confidence"). Therefore, Defendant's objection is overruled.

In Interrogatory No. 4, Plaintiff requests:

> Please describe in detail the policies, practices and/or procedures Defendant uses to ensure Defendant's Facilities comply with 42 U.S.C. § 12182(b)(2)(A)(iii) and 28 C.F.R. § 36.303.

ECF No. 16-2 at 11. In its responses to Plaintiff's discovery requests, Defendant objects to this request, stating that the subparts cause the number of interrogatories to exceed the limit imposed by the Federal Rules. ECF No. 16-1 at 4–5. The Court notes that Defendant's objection to this interrogatory in its discovery response is identical to the remaining interrogatories at issue, and, further, Defendant does not mention this interrogatory in its portion of the joint motion, let alone expand on why it believes these subparts are not related. *See SolarCity Corp. v. Doria*, No. 16cv3085-JAH-RBB, 2018 WL 467898, at *3 (S.D. Cal. Jan. 18, 2018) (overruling boilerplate objections based on the party's failure to "offer any explanation or supporting legal authority in its opposition"); *Medina v. County of San Diego*, No. 08cv1252-BAS-RBB, 2014 WL 4793026, at *8 (S.D. Cal. Sept. 25, 2014) (only considering objections "subsequently reasserted and relied upon" in the discovery motion). Additionally, the Court finds that the subparts relate to the overall

subject matter of the interrogatory. *Compare* 42 U.S.C. § 12182(b)(2)(A)(iii) (explaining that discrimination includes failing to take steps to ensure that no individual with a disability is denied services or treated differently because of the lack of auxiliary aids) *with* 28 C.F.R. § 36.303 (defining auxiliary aids). Listing the statute and agency regulation interpreting that statute does not create discrete subparts that should be treated as separate interrogatories. Therefore, Defendant's objection is overruled.

In Interrogatory No. 6, Plaintiff requests:

Please identify all persons with knowledge of any fact listed in response to Interrogatory Nos. 4–5.[1]

ECF No. 16-2 at 12. In its responses to Plaintiff's discovery requests, and again reaffirmed in the joint motion, Defendant objects to this request, stating that the subparts cause the number of interrogatories to exceed the limit imposed by the Federal Rules. ECF No. 16 at 12; ECF No. 16-1 at 6. In its portion of the joint motion, Defendant defends its position: "How does a response to Interrogatory 6 as to 4 relate to 5? Other than that both call for the identification of human beings?" ECF No. 16 at 14. However, the Court notes that Interrogatory No. 4 requests policies, practices, and procedures regarding compliance with 42 U.S.C. § 12182(b)(2)(A)(iii) and 28 C.F.R. § 36.303, and Interrogatory No. 5 requests policies, practices, and procedures regarding compliance with 28 C.F.R. § 36.211. ECF No. 16-2 at 11–12. The Court finds that the subparts relate to the overall subject matter of the interrogatory, i.e., which potential witnesses know information about Defendant's compliance with the accessibility requirements of the ADA. *Compare* 42 U.S.C. § 12182(b)(2)(A)(iii) (explaining that discrimination includes failing to take steps to ensure

---

[1] For completeness, the text of Interrogatory No. 5 is as follows:

Please describe in detail the policies, practices and/or procedures Defendant uses to ensure the accessibility of the Freestyle machines are maintained as required by 28 C.F.R. § 36.211.

ECF No. 16-2 at 12.

that no individual with a disability is denied services or treated differently because of the lack of auxiliary aids) *with* 28 C.F.R. § 36.303 (defining auxiliary aids) *and* 28 C.F.R. § 36.211 (requiring that accessibility features be maintained in operable working condition). In this case, requesting a list of potential witnesses regarding compliance with the statute and agency regulations interpreting that statute does not create discrete subparts that should be treated as separate interrogatories. Therefore, Defendant's objection is overruled.

> In Interrogatory No. 8, Plaintiff requests:

> If you contend the Freestyle machines are in compliance with the ADA, or ever have been in compliance with the ADA during the Relevant Time Period, please state the basis for that contention.

ECF No. 16-2 at 12. In its responses to Plaintiff's discovery requests, Defendant objects to this request, stating that the subparts cause the number of interrogatories to exceed the limit imposed by the Federal Rules. ECF No. 16-1 at 7. The Court notes that Defendant's objection to this interrogatory in its discovery response is identical to the remaining interrogatories at issue, and, further, Defendant does not mention this interrogatory in its portion of the joint motion, let alone expand on why it believes these subparts are not related. *See SolarCity Corp.*, 2018 WL 467898, at *3 (overruling boilerplate objections based on the party's failure to "offer any explanation or supporting legal authority in its opposition"); *Medina*, 2014 WL 4793026, at *8 (only considering objections "subsequently reasserted and relied upon" in the discovery motion). The Court notes that Defendant separated its response by "are in compliance" and "ever have been in compliance." ECF No. 16-1 at 7–8. Asserting that these are not related is a strained interpretation, at best. The Court finds that this distinction does not create discrete subparts that should be treated as separate interrogatories. Additionally, the Court finds that this interrogatory is essentially a "contention interrogatory," and that Defendant needs to address its contents in its defense of this case. *See* FED. R. CIV. P. 33(a)(2); *Largan Precision Co. v. Samsung Elecs. Co.*, No. 13cv2740-DMS-NLS, 2015 WL 11251730, at *2 (S.D. Cal. May 5, 2015) (explaining that contention interrogatories are "not to obtain

facts, but rather to narrow the issues that will be addressed at trial and to enable the propounding party to determine the proof required to rebut the respondent's position"). Therefore, Defendant's objection is overruled.

> In Interrogatory No. 11, Plaintiff requests:
>
> Please identify all lawsuits to which Defendant is a party, whether filed in state or federal court, or DOJ enforcement actions that concern the ADA, Unruh, or the DPA, and/or relate to Defendant's Facilities and/or the Freestyle machines.

ECF No. 16-2 at 13. In its responses to Plaintiff's discovery requests, Defendant objects to this request, stating that the subparts cause the number of interrogatories to exceed the limit imposed by the Federal Rules. ECF No. 16-1 at 9. The Court notes that Defendant's objection to this interrogatory in its discovery response is identical to the remaining interrogatories at issue, and, further, Defendant does not mention this interrogatory in its portion of the joint motion, let alone expand on why it believes these subparts are not related. *See SolarCity Corp.*, 2018 WL 467898, at *3 (overruling boilerplate objections based on the party's failure to "offer any explanation or supporting legal authority in its opposition"); *Medina*, 2014 WL 4793026, at *8 (only considering objections "subsequently reasserted and relied upon" in the discovery motion). The Court notes that Defendant separated its response into six subsections: (1) "lawsuits relating to the ADA, Unruh, or DPA," (2) "DOJ enforcement actions relating to the ADA, Unruh, or DPA," (3) "lawsuits relating to Defendant's Facilities," (4) "DOJ actions relating to Defendant's Facilities," (5) "lawsuits relating to Freestyle machines," and (6) "DOJ actions relating to Freestyle machines." ECF No. 16-1 at 9–10. The Court finds that the subparts relate to the overall subject matter of the interrogatory, i.e., whether Defendant has faced lawsuits or other enforcement action regarding its restaurants or use of the Freestyle machines. The Court finds that distinctions between the statutes or the kind of action do not create discrete subparts that should be treated as separate interrogatories. Therefore, Defendant's objection is overruled.

/ /

### iii.    Summary

The purpose of the limit on interrogatories is to ensure that discovery is conducted in an efficient manner. Defendant's strategy defeats this purpose and unnecessarily duplicates discovery. First, the Court disagrees that the interrogatories are compound; second, if they are, the better course of action would have been for Defendant to notify Plaintiff of that prior to its response and work out a reasonable compromise.

For the reasons set forth above, the Court overrules Defendant's objections and deems that Interrogatory Nos. 3, 4, 6, 8, and 11 count as one interrogatory each. Therefore, the 25 interrogatory limit imposed by the Federal Rules has not been reached. As such, the Court **GRANTS** Plaintiff's motion to compel and **ORDERS** that Defendant respond to Interrogatory Nos. 12–16 by **May 8, 2020**.

### B.    Whether "Defendant's Facilities" Definition is Overly Broad, Unduly Burdensome, or Irrelevant

Plaintiff seeks to compel responses to interrogatories and requests for production of documents relating to "Defendant's Facilities." ECF No. 16 at 4. Plaintiff defines "Defendant's Facilities" as "the Jack In the Box branded restaurants owned or operated by Defendant." ECF No. 16-2 at 7. Defendant, instead, responded to many of Plaintiff's discovery requests with information solely related to the Oceanside location visited by Plaintiff. *See, e.g.*, ECF No. 16-1 at 4. In the joint motion for determination of discovery dispute, Defendant does not substantively oppose Plaintiff's request, and instead raises a procedural argument.

The Court requires that the parties bring any discovery dispute to its attention no later than 45 days after the date of service of the written discovery response that is in dispute. Chmb.R. at 3. To bring the discovery dispute to the Court's attention, the parties must send a joint email to Chambers, requesting a telephonic discovery conference and describing the dispute and each party's position. *Id.* "No discovery motion may be filed until the Court has conducted its pre-motion telephonic conference," and "[f]ailure to meet [the 45-day] deadline will [also] bar a party from filing a corresponding discovery

motion[,]" i.e., any topics not brought to the Court's attention by the deadline are not permitted in a discovery motion. *Id*. Here, Defendant contends that the dispute regarding compelling responses to interrogatories and requests for production of documents relating to "Defendant's Facilities" was not raised in the parties' email submission to the Court. ECF No. 16 at 14.

However, pursuant to the Court's chambers rules, the parties jointly emailed Chambers to initiate the Court's discovery dispute resolution process on February 19, 2020. The email specifically mentions the same discovery disputes at issue in the instant motion. The fourth issue was described as "whether Plaintiff's definition of 'Defendant's Facilities' is proper and not overly broad and burdensome." Email to Chambers, at 2 (Feb. 19, 2020). In the email, Plaintiff contended that his definition of "Defendant's Facilities" is proper, not overly broad, and not unduly burdensome, while Defendant contended that Plaintiff was improperly targeting restaurant locations that he never patronized. *Id*. Upon receipt of the joint email, the Court scheduled a telephonic discovery conference for February 24, 2020, and found that the issues presented in the email were ripe for motion practice. ECF No. 15. Therefore, Defendant's argument that this issue was not raised prior to the joint motion is without merit.

Since Defendant's procedural argument has been denied, the Court notes Defendant's failure to make any substantive arguments in opposition to Plaintiff's request. When ruling on a motion to compel, courts in this district "generally consider[ ] only those objections that have been timely asserted in the initial response to the discovery request and that are subsequently reasserted and relied upon in response to the motion to compel." *SolarCity Corp.*, 2018 WL 467898, at *3 (quoting *Medina*, 2014 WL 4793026, at *8); *Sherwin-Williams Co. v. Earl Scheib of Cal., Inc.*, No. 12cv2646-JAH-JMA, 2013 WL 12073836, at *2 n.1 (S.D. Cal. Mar. 4, 2013) (deeming all objections raised in response to the discovery requests but not addressed in the discovery motion to be moot or waived, limiting its review to arguments presented in the parties' briefs).

Even if the Court were to rule on Defendant's objections raised solely in its

responses to Plaintiff's discovery requests, they would be overruled. There, Defendant objects "on the grounds that 'Defendant's Facilities' as defined is grossly overly broad and overly inclusive and thusly burdensome, seeking information that is not likely to result in the discovery of admissible evidence. The burden is grossly disproportionate to the probative value of any such information. Plaintiff lacks standing to target locations in discovery that he has expressed no interest in patronizing and as to which he has not alleged any violations." *See, e.g.*, ECF No. 16-1 at 4, 9, 31.

First, "boiler plate objections that a request for discovery is 'overbroad and unduly burdensome, and not reasonably calculated to lead to the discovery of material admissible in evidence,' [] are improper unless based on particularized facts." *Vietnam Veterans of Am. v. CIA*, No. C 09-37-CW-JL, 2010 U.S. Dist. LEXIS 143865, at *32 (N.D. Cal. Nov. 12, 2010) (internal quotations omitted); *A. Farber & Ptnrs., Inc. v. Garber*, 234 F.R.D. 186, 188 (C.D. Cal. 2006) (stating that "general or boilerplate objections such as 'overly burdensome …' are improper—especially when a party fails to submit any evidentiary declarations supporting such objections" and collecting cases with similar holdings); *accord Mancia v. Mayflower Textile Servs. Co.*, 253 F.R.D. 354, 358–59 (D. Md. 2008) (collecting cases from multiple circuits). "Conclusory or speculative statements of harm, inconvenience, or expense are plainly insufficient." *Nationstar Mortg., LLC v. Flamingo Trails No. 7 Landscape Maint. Ass'n*, 316 F.R.D. 327, 334 (D. Nev. 2016). The Court finds that Defendant has failed to make a sufficient showing to support its objections based on burden or overbreadth.

Second, the Court finds that the information sought by Plaintiff is relevant. When analyzing relevance, Rule 26(b) no longer limits discovery to information "reasonably calculated to lead to the discovery of admissible evidence." *In Re Bard IVC Filters Prods. Liab. Litig.*, 317 F.R.D. 562, 563–64, 564 n.1 (D. Ariz. 2016) (discussing the 2015 amendments to the Federal Rules of Civil Procedure and the advisory committee's explicit removal of the phrase "reasonably calculated," and listing cases that continue to use the outdated pre-2015 standard). The relevance standard is commonly recognized as one that

is necessarily broad in scope in order "to encompass any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *Doherty v. Comenity Capital Bank*, No. 16cv1321-H-BGS, 2017 WL 1885677, at *2 (S.D. Cal. May 9, 2017) (internal quotation omitted). Courts have broad discretion to determine relevance for discovery purposes. *Id.* (citing *Hallett*, 296 F.3d at 751); *see also Youngevity Int'l, Inc. v. Smith*, No. 16cv704-BTM-JLB, 2017 WL 2692928, at *3 (S.D. Cal. June 22, 2017).

This action was brought as a class action, and Plaintiff needs to obtain discovery on whether Defendant's restaurants are governed by common policies and practices. *See, e.g.*, ECF No. 1 at ¶ 78 (bringing case as a putative class action on behalf of himself and other individuals who have visited any of Defendant's restaurants, not solely the restaurant Plaintiff visited); *id.* at ¶ 45 (alleging that "Defendant has no policies or procedures in place at its Restaurants requiring its employees to affirmatively offer and provide assistance with the Freestyle to individuals with visual disabilities"); *id.* at ¶ 74 (alleging that "Defendant has centralized policies regarding the management and operation of its Restaurants. Despite this, Defendant does not have a plan or policy that is reasonably calculated to cause its facilities to be in compliance with the ADA"); *see also Gutierrez v. Johnson & Johnson, Inc.*, No. CIV.A. 01-5302 WHW, 2002 WL 34717245, at *4 (D.N.J. Aug. 13, 2002) ("The relevant issue for many Courts in considering whether to allow company-wide or otherwise expanded discovery is the extent to which the case involves a common [] policy or practice").

Further, the Ninth Circuit has explained that "'the better and more advisable practice for a District Court to follow is to afford the litigants an opportunity to present evidence as to whether a class action was maintainable.'" *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942, (9th Cir. 2009) (quoting *Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304, 1313 (9th Cir. 1977)). As such, the Court finds that information regarding "Defendant's Facilities" is relevant here and **GRANTS** Plaintiff's motion to compel. *See, e.g.*, *Brum v. MarketSource, Inc.*, No. 17cv241-JAM-EFB, 2018 WL 3861558, at *3, *5–*6 (E.D. Cal.

Aug. 14, 2018) (requiring the defendant, in a putative wage-and-hour class action, to produce a 30% sampling of state-wide discovery, including stores in which the plaintiff did not work, including over 2100 employees' wage statements, because the plaintiff sought "information relevant to numerosity, commonality, and typicality, which plaintiffs must establish to certify the proposed class and subclass"); *Putnam v. Eli Lilly & Co.*, 508 F. Supp. 2d 812, 814 (E.D. Cal. Aug. 23, 2007) (requiring the defendant, in a putative wage-and-hour class action, to provide discovery regarding putative class members who worked in a sales division other than the plaintiff's own, deeming that contacting individuals from other sales divisions "could well be useful for plaintiff to determine, at a minimum, the commonality and typicality prongs of Rule 23"); *Gutierrez*, 2002 WL 34717245, at *5 (denying defendant's request to only provide discovery regarding companies where plaintiffs worked, in a putative employment discrimination class action, because "[p]ermitting a broader range of discovery, as advocated by plaintiffs, will present a more complete and reliable picture of the effects of [defendant]'s practices. . . . Moreover, all parties will benefit from a broad examination of the data. First and foremost, the Court, when asked to rule on class certification, will have the necessary data before it to determine if the requirements of Fed. R. Civ. P. 23(a) are met"). The Court **ORDERS** that Defendant respond to Plaintiff's discovery requests regarding "Defendant's Facilities" by **May 8, 2020**.

### C.    Whether Plaintiff should be Compelled to Submit to an IME

Defendant asserts that good cause exists for the Court to issue an order compelling Plaintiff to submit to an ophthalmologic IME. ECF No. 16 at 8–12. Plaintiff opposes Defendant's request, arguing that Plaintiff's disability is not in controversy. *Id*. at 5–7.

#### i.    *Legal Standard*

Federal Rule of Civil Procedure 35 provides that a Court "may order a party whose mental or physical condition . . . is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner." FED. R. CIV. P. 35(a)(1). For the Court to order an IME, the condition for which the examination is sought must be "in

controversy" and there must be "good cause" for the examination. *See Schlagenhauf v. Holder*, 379 U.S. 104, 118–19 (1964) (explaining that the court must decide "whether the party requesting a mental or physical examination or examinations has adequately demonstrated the existence of the Rule's requirements of 'in controversy' and 'good cause[]'"); FED. R. CIV. P. 35(a)(2)(A). "Like other rules of discovery, Rule 35 should be 'construed liberally in favor of examination, but the Court must balance the right of the party to be examined to avoid personal invasion against the moving party's right to a fair trial.'" *Ashby v. Mortimer*, 329 F.R.D. 650, 653 (D. Idaho 2019) (quoting *Does I-XIX v. Boy Scouts of Am.*, No. 13cv275-BLW, 2017 WL 4226401, at *1 (D. Idaho Sept. 22, 2017)).

As the movant, Defendant bears the burden of showing that Plaintiff's disability is "in controversy" and that "good cause" supports the request. *See, e.g., Schlagenhauf*, 379 U.S. at 118 (explaining that the "in controversy" and "good cause" requirements of Rule 35 "are not met by mere conclusory allegations—nor by mere relevance to the case—but require an affirmative showing by the movant"); *Mendoza v. City of Peoria*, No. 13cv258-PHX-NVW, 2013 WL 5705365, at *2 (D. Ariz. Oct. 21, 2013) ("The burden is on the moving party to show that a person's medical condition is in controversy and good cause exists for a mental or physical examination"); *Kob v. County of Marin*, No. C-07-2211-JL, 2009 WL 3706820, at *1 (N.D. Cal. Nov. 3, 2009) ("It is the moving party's burden to provide enough information for the court to find that the condition for which the examination is sought is 'in controversy' and that there is 'good cause' for the exam").

The "in controversy" and "good cause" requirements of Rule 35 are "necessarily related." *Schlagenhauf*, 379 U.S. at 118–19. "A plaintiff's physical condition is 'in controversy' when the condition is a subject of the litigation." *Nava v. City of Shafter*, No. 12cv10-AWI-JLT, 2013 WL 5278890, at *2–*3 (E.D. Cal. Sept. 17, 2013); *see, e.g., Franco v. Boston Sci. Corp.*, No. 05cv1774-RS, 2006 WL 3065580, at *1 (N.D. Cal. Oct. 27, 2006). To establish that "good cause" exists for the IME, "the moving party generally must offer specific facts showing the examination is necessary and relevant to the case."

*Nguyen v. Qualcomm Inc.*, No. 09cv1925-MMA-WVG, 2013 WL 3353840, at *8–*12 (S.D. Cal. July 3, 2013); *Franco*, 2006 WL 3065580, at *1–*2. "Factors that courts have considered include, but are not limited to, the possibility of obtaining desired information by other means, whether plaintiff plans to prove her claim through testimony of expert witnesses, whether the desired materials are relevant. . ." *Franco*, 2006 WL 3065580, at *1; *see, e.g.*, *Hanna v. Fresno County*, No. 14cv142-LJO-SKO, 2015 WL 7458691, at *3 (E.D. Cal. Nov. 24, 2015); *Juarez v. Autozone Stores, Inc.*, No. 08cv417-L-BLM, 2011 WL 1532070, at *1 (S.D. Cal. Apr. 21, 2011). However, a finding that the examination would yield relevant information is not enough, on its own, to establish good cause. *Schlagenhauf*, 379 U.S. at 118 ("The specific requirement of good cause would be meaningless if good cause could be sufficiently established by merely showing that the desired materials are relevant, for the relevancy standard has already been imposed by Rule 26(b). Thus, by adding the words ['] good cause[,'] the Rules indicate that there must be greater showing of need under Rules 34 and 35 than under the other discovery rules").

"Granting or denying a motion for a physical examination 'rests in the sound discretion of the trial court.'" *Ashby*, 329 F.R.D. at 653 (quoting *Coca-Cola Bottling Co. of Puerto Rico v. Negron Torres*, 255 F.2d 149, 153 (1st Cir. 1958)); *see, e.g.*, *Nguyen*, 2013 WL 3353840, at *4 ("Regardless of whether the 'good cause' requirement is met, it is within the Court's discretion to determine whether to order an examination"); *Storlie v. State Farm Mut. Auto. Ins. Co.*, No. 09cv2205-GMN-PAL, 2010 WL 3488982, at *4 (D. Nev. Aug. 25, 2010) ("even if the moving party establishes both elements, it is still within the sound discretion of the trial court to determine whether to order the examination"); *Williams v. Troehler*, No. 08cv1523-OWW-DLB, 2010 WL 121104, at *4 (E.D. Cal. Jan. 7, 2010) ("Even if good cause is shown, it is still within the court's discretion to determine whether to order an examination"); *Gattegno v. Pricewaterhousecoopers, LLP*, 204 F.R.D. 228, 230 (D. Conn. 2001) ("The decision as to whether such showing was made, and thus that an examination is warranted, ultimately lies in the sound discretion of the trial court").

/ /

### ii.      *Plaintiff's Disability is not in Controversy*

Defendant contends that Plaintiff's disability is in controversy. Defendant notes that, in his complaint, Plaintiff "alleges that *because of his disability* he was not provided full and equal access" and also "asserts that he plans on returning" to Defendant's restaurant. ECF No. 16 at 11 (emphasis added). According to Defendant, this "plac[es] [Plaintiff's] current physical state at issue."  *Id*. Though Defendant bears the burden to prove that Plaintiff's disability is in controversy, Defendant did not cite any authority to support its position.

As defined by the Americans with Disabilities Act ("ADA"), disability is "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). The ADA Amendments Act of 2008 "substantially reworked the language of Section 12102," the section which defines disability. *Hilton v. Wright*, 673 F.3d 120, 128, (2d Cir. 2012). There, Congress added an entire paragraph defining the "regarded as" prong. *Compare* 104 Stat. 327, 330 at § 3(2) (1990) *with* 122 Stat. 3553, 3555 at § 4(a) (2008) (amending section 3 of the ADA). Now, "[a]n individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this Act because of an actual *or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity*." 42 U.S.C. § 12102(3)(A) (emphasis added). Further, Congress instructed that the definition of disability "shall be construed in favor of broad coverage of individuals under this Act[.]" 42 U.S.C. § 12102(4)(A).

In his complaint, Plaintiff alleges this he "is self-evidently blind, in that he requires the use of a white cane, and was obviously visibly impaired during each visit he made to the Oceanside Location." ECF No. 1 at ¶ 51. Plaintiff brings this putative class action "on behalf of himself and all individuals who have an obvious visual disability (e.g., use a white cane or guide dog) . . ." *Id*. at ¶ 78. Using the "regarded as" definition of disability, Plaintiff could prosecute his case without ever having to allege that he was totally blind and instead

rely on the fact that he was regarded as disabled because he carried a white cane.[2] Therefore, Defendant has not met its burden to prove that Plaintiff's disability is in controversy.

### iii.   Defendant did not Show Good Cause for an IME

Defendant contends that there is good cause to compel Plaintiff to submit to an IME because (1) the results of the IME would weigh heavily on Plaintiff's ability to maintain standing, and (2) no comparable means exists to obtain the specifics of Plaintiff's visual limitations. ECF No. 16 at 11–12.

First, Defendant argues that, "[i]f Plaintiff can use the machines independently, his entire case falls apart." *Id*. at 9. The Court disagrees. The Court notes that, in the employment discrimination context, employers have "no duty to provide reasonable accommodation to an employee who fits the statutory definition of 'disabled' by virtue of a history of disability or being regarded as disabled, but has no actual disability." *Marrazzo v. Leavitt*, 719 F. Supp. 2d 1297, 1306 (D. Or. 2010); *see e.g.*, *Walker v. Venetian Casino Resort, LLC*, 2012 WL 4794149, at *14–*15 (D. Nev. Oct. 9, 2012). "This makes sense because a person who is only perceived to be disabled, but not actually disabled, would not need any accommodation to enable her to fulfill her job duties." *Poole v. Centennial Imps., Inc.*, No. 12cv647-APG-VCF, 2014 WL 2090810, at *4 (D. Nev. May 19, 2014). However, this does not extend to the equal access to public accommodations context. *See* 29 C.F.R. § 1630.2(g)(2)–(3) (in these cases [which do not challenge an employer's failure to make reasonable accommodations], the evaluation of coverage can be made solely under the 'regarded as' prong of the definition of disability, which does not require a showing of an

---

[2] To be clear, this order does not pass judgment on whether Plaintiff will prevail in this action based on a "regarded as" definition of disability. Instead, the Court points out Defendant's failure to address the use of the "regarded as" prong in this case. In requesting an IME, Defendant holds the burden to provide the Court with enough information to find that Plaintiff's disability is, in fact, in controversy. *See Schlagenhauf*, 379 U.S. at 118; *Mendoza*, 2013 WL 5705365, at *2; *Kob*, 2009 WL 3706820, at *1.

impairment that substantially limits a major life activity or a record of such an impairment"); *see, e.g.*, *Lovely H. v. Eggleston*, 235 F.R.D. 248, 254–58, 263 (S.D.N.Y. 2006) (certifying a sub-class within the main class of recipients of public assistance who "(a) have a physical or mental impairment that substantially limits one or more major life activities within the meaning of the Americans with Disabilities Act of 1990, (b) have a record of such an impairment, or (c) *are regarded as having such an impairment*" in a case involving allegations that transferring assistance to three hub centers in lieu of the 29 neighborhood offices makes them inaccessible places of public accommodation, in violation of the ADA) (emphasis added).

Defendant also cites *Harris v. Del Taco* for the proposition that "Plaintiff must allege that he suffered a particularized and concrete injury that affects him in a personal and individual way." ECF No. 16 at 11 (citing *Harris v. Del Taco #342*, No. CV04-730-DOC-MLGx, 2004 WL 3744291, at *2 (E.D. Cal. Sept. 13, 2004)). Though a correct reference, *Harris* is not analogous to the instant case.[3] There, the wheelchair-using plaintiff alleged that the defendant violated the ADA by denying him access the restaurant, and he claimed he was deterred from visiting again because he knew that other disabled people would also not enjoy full access. *Harris*, 2004 WL 3744291, at *1. In considering the defendant's motion to dismiss the complaint for lack of standing, the court held that the plaintiff established the requisite injury in fact with respect to the ADA violations which would impede his access, but he had not established an injury in fact with regard to violations not related to his disability of limited mobility, such as that the "public telephone has no volume control" and "restroom door [was] not identified in Braille[.]" *Id.* at *2–*3. Here, Plaintiff is not alleging violations completely unrelated to his own visual disability such as for those with hearing loss, as in *Harris*. Instead, here, Plaintiff is alleging that he is visually disabled, uses a white cane, and was not given assistance in operating the Freestyle

---

[3] The Court also notes that this case pre-dates the 2008 amendments to the ADA.

machine. ECF No. 1 at ¶¶ 51, 56, 57, 78. Defendant has not met its burden to prove why finding out whether Plaintiff is *totally* blind impacts his ability to maintain standing and thus requires an IME.[4] *Compare* ECF No. 16 at 11 ("While there may be little basis at this time for disputing that Plaintiff has significant or even total loss of vision in the center portion of his eyes, Plaintiff has offered no evidence of complete lack of vision – total blindness) *with* 42 U.S.C. § 12102(3)(A) ("An individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he [] has been subjected to an action prohibited under this Act because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity"); *see, e.g.*, *Boyer v. Five Guys Enters., LLC*, No. 15cv1417-L-JLB, 2018 WL 4680007, at *3–*4 (S.D. Cal. Sept. 28, 2018) (denying defendant's motion for summary judgment where it asserted that plaintiff did not have standing, and noting that "[i]t is undisputed that Plaintiff uses a white cane. [] His blindness was therefore apparent. He cannot use the visual interface of the Freestyle machine like the non-visually impaired customers").

Second, Defendant contends that no comparable means exists to obtain the specifics of Plaintiff's visual limitations, because medical records and relying on Plaintiff's testimony is insufficient. ECF No. 16 at 12. The Court disagrees. As discussed above, Defendant has not met its burden to show why evidence of complete blindness is imperative, especially given the "regarded as" prong which was expanded by the 2008 amendments to the ADA. *See Schlagenhauf*, 379 U.S. at 118–19 (explaining that the "in controversy" and "good cause" requirements of Rule 35 "are necessarily related"). The Court finds that medical records, expert testimony, and Plaintiff's deposition testimony are sufficient in this case, and that an IME would be unduly invasive, especially given the

---

[4] To be clear, the Court is not passing judgment on whether Plaintiff has standing in this case. The Court is instead noting that Defendant failed to meet its burden in explaining why an IME would impact a standing analysis.

security video showing that Plaintiff used a while cane during his visits. *See Hanna*, 2015 WL 7458691, at *3 ("A court must balance the unnecessary invasion of privacy against the compelling party's right to a fair trial").

Therefore, even if Defendant had met its burden to prove that Plaintiff's disability is in controversy, the Court finds that good cause does not exist for an IME. *Schlagenhauf*, 379 U.S. at 121 ("physical examinations are only to be ordered upon a discriminating application by the [] judge of the limitations prescribed by [] Rule [35]").

### *iv.    Summary*

Because Defendant did not meet its burden to show that Plaintiff's disability is in controversy and that good cause exists, Defendant's motion to compel is **DENIED**.

### D.    Additional Considerations

Defendant's portion of the joint motion is replete with unnecessary and disparaging comments about Plaintiff—including statements like: "Plaintiff decided to improve on the system of numbering[;]" "Was plaintiff testing the definition of insanity, stacking damages, or exaggerating with respect to 72 visits?" and "Plaintiff's view would be more informed were discovery governed by the 'Federal *Suggestions* of Civil Procedure.'" *See* ECF No. 16 at 8 n.2, 12:18, 14:1–4 (emphasis in original). The Court points Defendant's counsel to the Code of Conduct that governs attorney practice in this district, *see* CivLR 2.1, and reminds all counsel that they are expected to abide by this Code of Conduct and treat opposing parties with civility and respect.

## IV.    CONCLUSION

For the reasons set forth above, the Court orders as follows:

1.    Plaintiff's motion to compel Defendant's responses to Interrogatory Nos. 12–16 is **GRANTED**. Defendant shall serve supplemental discovery responses consistent with this Order no later than **May 8, 2020**;

2.    Plaintiff's motion to compel Defendant's responses to its discovery requests regarding "Defendant's Facilities" is **GRANTED**. Defendant shall serve

1    supplemental discovery responses consistent with this Order no later than

2    **May 8, 2020**; and

3         3.    Defendant's motion to compel Plaintiff to submit to an Ophthalmologic IME

4              is **DENIED**.

5

6         **IT IS SO ORDERED**.

7    Dated:  April 23, 2020

8              Honorable Allison H. Goddard

9              United States Magistrate Judge

3:19-cv-1565-JM-AHG